State, Kean, pros., v. Bronson et al.

---

## THE STATE, JOHN KEAN, PROSECUTOR, v. JOSEPH M. BRONSON ET AL.

When commissioners have been appointed under the act of March 27th, 1871, to lay out roads, public parks, highways, &c., in certain parts of the township of Union and county of Union, and to provide for payment of the expenses, a party, though a land-holder and tax-payer within the parts designated, cannot call in question the proceedings of the commissioners unless the natural and necessary consequence of their acts will subject him to taxation, or injuriously affect and interfere with his property or legal rights.

---

*Certiorari* to remove proceedings of commissioners, &c.

Submitted to Justices BEDLE, DALRIMPLE, and DEPUE, on written briefs.

For prosecutor, *J. R. English* and *Benjamin Williamson*.

For defendants, *R. S. Green*.

State, Kean, pros., v. Bronson et al.

The opinion of the court was delivered by

DALRIMPLE, J.   By an act of the legislature of this state, approved March 29th, 1871, (*Laws of* 1871, *p.* 1034,) the inhabitants of a section of the township of Union, in the county of Union, were incorporated by the name of the "Southeasterly Road District of the township of Union, in the county of Union," for the purpose of laying out, opening, and improving streets, roads, highways, and public parks within certain boundaries.   The act names five commissioners of public roads, whose duty it shall be to exercise the powers and duties by the act conferred, and who are to have exclusive control of the roads and highways within the district.   These commissioners are empowered to lay out streets, avenues, and public parks, and, on the petition in writing of the owners of at least a majority in lineal feet along any improvement sought for, to open or improve any street, highway, or park, and to cause sewers to be built, and for such purposes to take and appropriate lands and real estate necessary for such purpose, upon making compensation to the owners ; and for such purposes, the rights, powers, authority, privileges, and advantages conferred by the charter of the city of Elizabeth, and the supplements thereto, upon the council of that city, " as to the opening and improving of streets, highways, and parks, constructing sewers, and providing for the payment and collection of the costs and expenses thereof," are by the act conferred on the said commissioners, who are further authorized an empowered to have, hold, use, enjoy, and exercise all such powers, subject to the regulations and provisions of said charter, so far as the same are not modified by the act first mentioned.   The commissioners proceeded under the act of incorporation, and contracted to have Magie avenue sewered, and paved with Stow foundation pavement, at an expense of about $92,500, and, for the purpose of defraying the expenses of the work in part, ordered improvement bonds, to the amount of about $26,000, to be issued.   The *certiorari* brings up the resolution determining on the improvements and all proceedings touching and concerning the same.   The prose-

cutor is a tax-payer and land-owner within the limits of the corporation. He is not liable to be assessed for benefits, and owns no land on the line of the proposed improvements. He bases his right so maintain this writ on the ground that the commissioners, by the third section of the act of incorporation, are given power, from time to time, to borrow money to pay the costs, damages, and expenses of improvements, and to issue bonds of the corporation therefor, and to cause assessments, to liquidate the same, to be made on the property benefited, to be collected and paid in the manner provided in the charter of Elizabeth and supplements.

It will be seen, from the foregoing statement, that the commissioners are to proceed in raising money to defray the costs and expenses of the improvements authorized, in accordance with the provisions of the charter of Elizabeth and supplements, except so far as the same are modified by the act of 1871. By the charter of Elizabeth, (*Laws of* 1863, *p.* 124, § 35,) power is given the city council, upon any public work being contracted for, to borrow the amount necessary to defray the expenses thereof, in anticipation of assessments for benefits, and to secure the loan by improvement bonds. By act of 1864, (*Laws of* 1864, *p.* 645, § 5,) these bonds must be made payable in six years from date. By section six of same act, the assessments for benefits becomes, until paid, a lien upon the lands assessed. By sections one hundred and one, and one hundred and five of the charter, it is provided that when the work is done, an assessment of the costs and expenses thereof shall be made on the lands benefited ; and by virtue of the provisions of sections one hundred and ten and one hundred and eleven, the assessment for benefits is either to be paid in cash, in sixty days after it becomes due, with interest from the time it was made, or a bond for the amount is to be given by the owner of the lands, payable in equal annual installments of one-fifth of the whole amount, with interest at the rate of eight per cent., payable semi-annually ; and in default of giving the bond and payment of the money, or in case of default in payment of the bond according to its

condition, then the lands may be sold to raise the amount due, according to the eighty-third section of the act, which provides that, in case any tax or assessment shall remain unpaid, the city treasurer shall proceed to sell, by public auction, the lands and real estate on which said tax or assessment shall have been imposed, or may be a lien, for the lowest term of years, but in no case exceeding fifty years, for which any person will take the same and pay the amount of such tax or assessment, with interest, costs, and charges; and any lands not bid for, when offered for sale, shall be struck off to the city for fifty years. The city is authorized to loan its credit to defray the expenses of public improvements, and indemnify itself by assessment on the property benefited. The burden falls upon the property benefited. Before the improvement bonds are payable, the assessments are collectible. The question now presented is, whether the prosecutor, because of his being a property-owner and tax-payer within the corporation, has a legal right to question the proceedings of the commissioners. He can never be called on to pay any part of the expenses of the improvement, unless the assessments shall prove inadequate to pay the bonds, and then only in the event that the corporation is sued, judgment recovered against it, and the property of the prosecutor taken in execution to satisfy the judgment against the corporation, of which I assume he is a member. It is contended that this liability is too contingent and remote to give the prosecutor a standing in court. I think the contention is correct, unless we are prepared to go the length of declaring that every tax-payer of a *quasi* corporation, no matter how remote or contingent his liability, may solely, on the ground that he is a tax-payer, call in question the proceedings of the officers of the corporation.

It is a well-established general rule that a right of action does not exist in favor of one who is only damnified as one of the public, in common with his fellow-citizens. The act complained of, in order to afford a right of action to a private individual, must be specially injurious to him. In our state we have held, in accordance with the doctrine of certain cases

in the first district of the Supreme Court of the State of New York, and the rule, so far as this court is concerned, may be said to be established, that a tax-payer may bring in question the action of the municipal authorities, if such action will subject him to a tax in common with his fellow citizens. *The State, Danforth, pros.*, v. *City of Paterson*, 5 *Vroom* 171; *The State, Gregory et al., pros.*, v. *Mayor of Jersey City*, 5 *Vroom* 429; *Same* v. *Same*, 5 *Vroom* 390. He is not compelled to wait until the tax or assessment is actually levied.

Beyond the doctrine thus established, I do not think that sound legal principle will authorize us to go. In the case before us, the prosecutor does not show that the expenses of the public improvements in question must necessarily be borne by the tax-payers of the corporation; on the contrary, it appears that if the commissioners do their duty—and the legal presumption is that they will—neither the prosecutor nor his property will ever be resorted to, in any event, to pay the expenses of the proposed improvements. A fund has been carefully provided from which they are to be paid, and we have no right to say that it will prove inadequate. Anxious as I am to shield the tax-payer against the illegal and sometimes fraudulent acts of municipal officers, I can find no legal principle or adjudged case which will give him a standing in court, unless the natural and necessary consequences of the act complained of will subject him to taxation, or injuriously affect or interfere with his property or legal rights.

The prosecutor not having shown that he will be injured by the proceedings brought up, the writ must be dismissed, with costs.

CITED *in State, Montgomery, pros.*, v. *Trenton*, 7 *Vr.* 86.